UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LAURA L. DELACRUZ,<br><br>    Plaintiff,<br><br>v.<br><br>MAHROUQ ENTERPRISE INTERNATIONAL, INC. d/b/a MEI FINANCE, L.L.C.,<br><br>    Defendant. | CIVIL COMPLAINT<br><br><br>CASE NO. 3:21-cv-00582<br><br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

NOW comes LAURA L. DELACRUZ ("Plaintiff"), by and through the undersigned attorney, complaining as to the conduct of MAHROUQ ENTERPRISE INTERNATIONAL, INC. d/b/a MEI FINANCE, L.L.C. ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 *et seq.*, the Texas Debt Collection Act ("TDCA") pursuant to Tex. Fin. Code Ann. § 392 *et seq.*, as well as for Invasion of Privacy ("IOP"), Trespass to Chattels ("TTC"), Intentional Infliction of Emotional Distress ("IIED"), Breach of Contract, and Negligent Misrepresentation, stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the TCPA. Subject matter jurisdiction is conferred upon this Court by 47 U.S.C. §227, 28 U.S.C. §§1331 and 1337, as the action arises

1

under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Texas and a substantial portion of the events that gave rise to this action occurred within the Northern District of Texas.

## PARTIES

4.   Plaintiff is a natural person over 18 years-of-age residing in Celburne, Texas, which lies within the Northern district of Texas.

5.   Plaintiff is a "person" as defined by 47 U.S.C. §153(39).

6.   Defendant is a limited liability company organized under the laws of the State of Texas, with its principal place of business located at 108 N. Collins Street, Arlington, Texas 76011. Defendant is engaged in the business of offering automobile loans to consumers, and in connection therewith, collecting or attempting to collect, directly or indirectly, debts owed or due using the mail and telephone from consumers across the country, including consumers located in the state of Texas.

7.   Defendant is a "person" as defined by 47 U.S.C. §153(39).

8.   Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, third-party contractors, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

9.   In approximately October of 2018, Plaintiff purchased a 2010 Nissan Altima ("subject automobile") from Dollar Rent A Car Car Sales ("Dollar"), which was financed by Defendant.

10. After Plaintiff originally agreed to purchase the subject automobile in October 2018, Plaintiff was contacted by Defendant two months later, in approximately December 2018, and was informed that she needed to come back to the dealership and sign a new version of the underlying contract, as the original paperwork was filled out incorrectly.

11. Defendant advised Plaintiff that, if she did not immediately come back to the dealership, Defendant would enable the Ituran USA Controlit/Collect Payment Assurance GPS Device ("GPS Device") installed on the subject automobile, which would prevent Plaintiff from being able to use the subject vehicle.

12. So, needing her vehicle and not wanting it to be disabled, Plaintiff returned and executed further paperwork on approximately December 19, 2018.

13. The underlying paperwork included an addendum between Plaintiff and Defendant which governed the use of the GPS Device.

14. Plaintiff routinely made timely payments to Defendant over the following two years; however, in approximately November 2020, due to unforeseen financial hardships, Plaintiff eventually fell behind on her scheduled payments to Defendant, thus incurring debt ("subject debt").

15. However, prior to Plaintiff falling behind on her payments to Defendant, the GPS Device installed on Plaintiff's vehicle caused significant issues with Plaintiff's ability to start her vehicle, as she would frequently have to try multiple times before the subject automobile would start.

16. Plaintiff has had the issue looked at by mechanics, who confirmed the GPS Device was causing the starting issues, further quoting Plaintiff approximately $700-$1200 to fix the issue.

17. Around November of 2020, Plaintiff began receiving calls to her cellular phone, (469) XXX-1026, from Defendant.

18. At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, and operator of the cellular phone ending in -1026. Plaintiff is and has always been financially responsible for the cellular phone and its services.

19. Defendant has primarily used the phone numbers (682) 257-1957, (682) 305-1908, (817) 918-9611, (682) 305-1964, (682) 305-1904, and (817) 918-9622 when placing calls to Plaintiff's cellular phone, but upon information and belief, Defendant has used other numbers as well.

20. Upon information and belief, the above-referenced phone numbers are regularly utilized by Defendant during its debt collection activities.

21. During answered calls, Plaintiff has been subjected to a noticeable pause, causing Plaintiff to say "hello" several times, before being connected to a live representative.

22. Plaintiff, through her contacts with Defendant, was informed that Defendant was attempting to collect upon the subject debt.

23. Overwhelmed by Defendant's consistent calls, Plaintiff demand that Defendant cease calling her.

24. Defendant willfully ignored Plaintiff's request and continued placing phone calls to Plaintiff's cellular phone, oftentimes resulting in multiple phone calls per day.

25. Defendant further told Plaintiff that it would not stop calling and that the harassing and repeated phone calls would continue until the subject debt was paid in full.

26. Despite Plaintiff's efforts and numerous attempts to get Defendant's harassing conduct to cease, Defendant has continued to regularly call her cellular phone up until the filing of this lawsuit.

27. Plaintiff has received not less than 100 phone calls from Defendant since asking it to stop calling.

28. Defendant has suffered significant emotional distress as a result of Defendant's harassing collection campaign.

29. Unfortunately, Defendant's harassment of Plaintiff did not end with its phone calls to Plaintiff's cellular phone.

30. In addition to the phone calls to Plaintiff's cellular phone, Defendant similarly place repeated phone calls to the references Plaintiff provided to Defendant.

31. On at least one occasion, Defendant disclosed the total amount due on the subject debt to one of Plaintiff's third-party references.

32. Plaintiff attempted to get Defendant to cease such conduct, but Defendant ignored her requests and continued to contact her references and disclose information to them regarding Plaintiff's indebtedness.

33. Plaintiff was extremely embarrassed and suffered significant emotional distress given Defendant's contacting third parties, as her personal and sensitive financial information was unnecessarily and harassingly disclosed to such individuals, all as part of Defendant's concerted effort to harass Plaintiff into making payment.

34. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with her undersigned attorney regarding her rights, resulting in exhausting time and resources.

35. Plaintiff has been unfairly and unnecessarily harassed by Plaintiff's actions.

36. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, invasion of privacy, aggravation that accompanies excessive and harassing collection telephone calls, emotional distress, embarrassment that her personal information was disclosed to third parties, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of her telephone services, loss of cellular phone capacity, diminished

cellular phone functionality, decreased battery life on her cellular phone, and diminished space for data storage on her cellular phone.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

37. Plaintiff repeats and realleges paragraphs 1 through 34 as though fully set forth herein.

38. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") *or* pre-recorded messages without their consent. The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

39. Defendant used an ATDS in connection with its communications directed towards Plaintiff's cellular phone. The noticeable pause that Plaintiff experienced upon answering Defendant's calls, as well as the fact that Plaintiff had to repeatedly say "hello" before she was connected with a live representative, is instructive that an ATDS was being utilized to generate the phone calls. Additionally, Defendant's continued contacts after Plaintiff demanded that the phone calls stop further demonstrates Defendant's use of an ATDS. Moreover, the nature and frequency of Defendant's contacts establishes the involvement of an ATDS.

40. Upon information and belief, the system employed by Defendant to place phone calls to Plaintiff's cellular phone has the *capacity* – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

41. Defendant violated the TCPA by placing at least 100 phone calls to Plaintiff's cellular phone using an ATDS without her consent. Any consent Plaintiff *may* have given to Defendant by virtue of incurring the subject debt was explicitly revoked by her demands that it cease contacting her.

6

42. The calls placed by Defendant to Plaintiff were regarding collection activity and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

43. Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff for at least $500.00 per call.  Moreover, Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).  After Plaintiff notified Defendant of her demands to cease calling, Defendant unlawfully continued placing unwanted collection calls to Plaintiff's cellular phone. Accordingly, Defendant had knowledge of Plaintiff's request and information, but knowingly and intentionally continued to place numerous calls to her cellular phone.

WHEREFORE, Plaintiff, LAURA L. DELACRUZ, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

c. Awarding Plaintiff costs and reasonable attorney fees;

d. Enjoining Defendant from further contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT

44. Plaintiff restates and realleges paragraphs 1 through 41 as though fully set forth herein.

45. Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

46. Defendant is a "debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6).

47. The subject debt is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

    a. **Violations of TDCA § 392.302**

48. The TDCA, pursuant to Tex. Fin. Code Ann. § 392.302(4), states that "a debt collector may not oppress, harass, or abuse a person by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."

49. Defendant violated the TDCA when it continued to call Plaintiff's cellular phone not less than 100 times after she notified it to stop calling. The repeated contacts were made with the hope that Plaintiff would succumb to the harassing behavior and ultimately submit a payment. Rather than understanding Plaintiff's situation and abiding by her wishes, Defendant continued in its harassing campaign of phone calls in hopes of extracting payment. Defendant's intent to harass Plaintiff through the repeated phone calls is further evinced through its statements that it would not stop calling until Plaintiff paid the subject debt in full, as Defendant made such threats in direct response to Plaintiff informing Defendant of the harassing nature of its calls. Defendant's intent to harass is further evident when considering the nature of the phone calls it placed to Plaintiff's references.

50. Upon being told to stop calling, Defendant had ample reason to be aware that it should not continue its harassing calling campaign. Yet, Defendant consciously chose to continue placing systematic calls to Plaintiff's cellular phone knowing that its conduct was unwelcome. Upon information and belief, it was Defendant's goal to extract payment from Plaintiff through its coercive tactics.

   b. **Violations of TDCA § 392.304**

51. The TDCA, pursuant to Tex. Fin. Code Ann. § 392.304(19) prohibits a debt collector from "using any . . . false representation or deceptive means to collect a debt or obtain information concerning a consumer."

52. Defendant violated the TDCA through the implicit misrepresentations made on phone calls placed to Plaintiff's cellular phone. Through its conduct, Defendant misleadingly represented to Plaintiff that it had the lawful ability to continue contacting her cellular phone using an automated system absent her consent. Such lawful ability was revoked upon Plaintiff demanding that Defendant stop calling her cellular phone, illustrating the deceptive nature of Defendant's conduct.

WHEREFORE, Plaintiff, LAURA L. DELACRUZ, respectfully requests that this Honorable Court enter judgment in her favor as follows:

 a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

 b. Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1);

 c. Awarding Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2);

 d. Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

 e. Awarding Plaintiff costs and reasonable attorney fees, pursuant to Tex. Fin. Code Ann. § 392.403(b);

 f. Enjoining Defendant from further contacting Plaintiff seeking payment of the subject debt; and

 g. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III-INVASION OF PRIVACY – INTRUSION UPON SECLUSION

53. Plaintiff restates and realleges paragraphs 1 through 50 as though fully set forth herein.

54. Defendant, through its barrage of phone calls, has repeatedly and intentionally invaded Plaintiff's privacy.

55. Defendant's persistent and unwanted autodialed phone calls to Plaintiff's cellular phone eliminated Plaintiff's right to privacy.

56. Moreover, Defendant's behavior in continuously contacting Plaintiff by phone multiple times per day was highly intrusive and invasive.

57. Defendant's unsolicited phone harassment campaign severely disrupted Plaintiff's privacy, disrupted Plaintiff's overall focus, and continually frustrated and annoyed Plaintiff to the point where Plaintiff was denied the ability to quietly enjoy her life, instead having it upended by Defendant's harassing phone call campaign.

58. These persistent collection calls eliminated the peace and solitude that Plaintiff would have otherwise had in Plaintiff's home and/or any other location in which Plaintiff would have normally brought her cellular phone.

59. By continuing to call Plaintiff in an attempt to dragoon Plaintiff into payment, Defendant gave Plaintiff no reasonable escape from its incessant calls.

60. As detailed above, by persistently autodialing Plaintiff's cellular phone without her prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

61. Defendant's relentless collection efforts and tactic of repeatedly auto dialing Plaintiff's cellular phone after she requested that these calls cease is highly offensive to a reasonable person.

62. Defendant intentionally and willfully intruded upon Plaintiff's solitude and seclusion by placing numerous unconsented phone calls to Plaintiff's cellular phone in a short period of time.

WHEREFORE, Plaintiff, LAURA L. DELACRUZ, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff reasonable attorney's fees and costs;

e. Enjoining Defendant from contacting Plaintiff; and

f. Awarding any other relief as the Honorable Court deems just and appropriate.

## COUNT IV-TRESPASS TO CHATTELS

63. Plaintiff restates and realleges paragraphs 1 through 60 as though fully set forth herein.

64. Trespass to Chattels is defined as the intentional interference with the possession, or physical condition of a chattel in the possession of another, without justification. Prosser, Torts, 64 (2d ed.).

65. "The harm recognized by the ancient common law claim of trespass to chattels — the intentional dispossession of chattel, or the use of or interference with a chattel that is in the possession of another, is a close analog for a TCPA violation." Mey v. Got Warranty, Inc., 193 F.Supp.3d 641, 647 (N.D. W. Va. 2016).

66. Courts have applied this tort theory to unwanted telephone calls and text messages. See Czech v. Wall St. on Demand, 674 F.Supp.2d 1102, 1122 (D.Minn. 2009) and Amos Financial, L.L.C. v. H&B&T Corp., 48 Misc.3d 1205(A), 2015 WL 3953325, at *8 (N.Y.Sup. Ct. June 29, 2015).

67. "Even if the consumer does not answer the call or hear the ring tone, the mere invasion of the consumer's electronic device can be considered a trespass to chattels, just as "plac[ing a] foot

on another's property" is trespass." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1551 (2016) (Thomas, J., concurring).

68. Defendant interfered with Plaintiff's ability to use her cellular phone while it was in her possession.

69. Defendant barraged Plaintiff with numerous phone calls after she made demands that the calls stop, including multiple phone calls on the same day, leaving her unable to use or possess her cellular phone in the manner in which she wanted to during such time.

70. Defendant knew or should have known that its phone calls were not consented to, as Plaintiff stated that Defendant must cease contacting her.

71. Defendant caused damage to Plaintiff's cellular phone, including, but not limited to, the wear and tear caused to her cellular phone, the loss of battery charge, and the loss of battery life.

72. Plaintiff also suffered damages in the form of stress, anxiety, and emotional distress, from Defendant's continuous interference with her possession of her cellular phone.

WHEREFORE, Plaintiff, LAURA L. DELACRUZ, respectfully requests that this Honorable Court enter judgement in her favor as follows:

   a. Enter judgement in favor of Plaintiff and against Defendant;

   b. Award Plaintiff actual damages in an amount to be determined at trial;

   c. Award Plaintiff punitive damages in an amount to be determined at trial;

   d. Enjoining Defendant from contacting Plaintiff; and

   e. Award any other relief the Honorable Court deems equitable and just.

### COUNT V-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff restates and realleges paragraphs 1 through 70 as though fully set forth herein.

74. To state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the conduct caused the plaintiff emotional distress; and (4) the emotional distress was severe. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).

75. Defendant acted intentionally and recklessly in contacting Defendant in such a manner so as to cause severe emotional distress. Defendant intended to place each phone call to Plaintiff. Defendant placed these calls knowing the extent to which its phone calls were causing distress to Plaintiff. Plaintiff tried repeatedly to inform Defendant of the severe emotional distress she was experiencing, yet these pleas fell on deaf hears, as Defendant instead threatened to place further phone calls to Plaintiff. Defendant's conduct was similarly reckless in that it acted with a reckless disregard for the severe distress its phone calls were causing Plaintiff.

76. Defendant's conduct was extreme and outrageous. Defendant placed nearly 100 phone calls to Plaintiff after Plaintiff told it that she could not pay, after Plaintiff told it that she was suffering severe distress as a result of its conduct, and after Plaintiff demanded that the phone calls stop. Defendant's conduct in contacting third parties repeatedly and informing them of Plaintiff's indebtedness further underscores the extreme and outrageous nature of Defendant's conduct. Such an extensive series of phone calls to a purported debtor who has professed repeatedly that she cannot pay and that she was suffering from such distress.

77. Defendant's conduct was designed to cause severe emotional distress to the Plaintiff.

78. Defendant caused Plaintiff to suffer from severe emotional distress, both by way of endless phone calls at all hours of the day, as well as contacting her references repeatedly and disclosing to at least one reference the amount due on the subject debt.

79. Plaintiff became severely distressed that Defendant would continue to disclose the nature of her personal financial obligation on the subject debt to her references.

80. Defendant's actions were designed to instill fear and emotional distress upon Plaintiff.

81. Defendant's intentional or reckless conduct caused severe emotional distress to Plaintiff.

82. As stated above, Plaintiff has suffered damages from Defendant's outrageous conduct.

WHEREFORE, Plaintiff, LAURA L. DELACRUZ, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Enter judgment in Plaintiff's favor and against Defendant;
b. Award Plaintiff her actual damages in an amount to be determined at trial;
c. Award Plaintiff punitive damages in an amount to be determined at trial;
d. Award any other relief this Honorable Court deems equitable and just.

### COUNT VI-BREACH OF CONTRACT

83. Plaintiff restates and realleges paragraphs 1 through 80 as though fully set forth herein.

84. Defendant breached the GPS Device addendum to its contract with Plaintiff when it provided a GPS Device which was defective and materially impacted Plaintiff's ability to use the subject automobile.

85. The GPS Device required by Defendant to be installed on the subject automobile resulted in Plaintiff's vehicle needing repairs of approximately $700-$1200.

86. Defendant's breach by defective performance entitles Plaintiff to the cost of repairs brought upon by Defendant's breach.

87. Defendant further breached this contract when it threatened to shut down Plaintiff's vehicle with the GPS Device if Plaintiff failed to come back to the dealership and sign a new contract.

88. Such threat went beyond the permissible use of the GPS Device contained with the contract.

89. Defendant's breach in this regard harmed Plaintiff, as she incurred pecuniary loss when she was forced to take time for her day and incur gas costs to sign further paperwork in an effort to avoid having her vehicle shut down.

WHEREFORE, Plaintiff, LAURA L. DELACRUZ, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Enter judgment in her favor and against Defendant;
b. Award Plaintiff her actual damages in an amount to be determined at trial;
c. Award Plaintiff punitive damages in an amount to be determined at trial;
d. Award any other relief this Honorable Court deems equitable and just.

## COUNT VII-NEGLIGENT MISREPRESENTATION

90. Plaintiff restates and realleges paragraphs 1 through 87 as though fully set forth herein.

91. Texas law defines the tort of negligent misrepresentation as involving: "One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Rest. (Second) of Torts, § 552(1); *Federal Land Bank Ass'n of Tyler v. Sloane* 825 S.W.2d 439, 442 (Tex. 1991).

92. Defendant negligently misrepresented the nature and functionality of the GPS Device prior to Plaintiff agreeing to purchase the subject automobile with the GPS Device attached.

93. Defendant misrepresented the potential impact the GPS Device would have on the subject automobile's ability to start, as it was represented to Plaintiff that the GPS Device would only serve as a means to inhibit her use of the vehicle when she was behind on payments.

94. However, the subject vehicle was unable to start on numerous occasions before Plaintiff was behind on payments.

95. Furthermore, Defendant threatened Plaintiff that it would use the GPS Device to stop the vehicle unless she came back in a signed a subsequent contract, further underscoring the falsity of Defendant's representations regarding the situations in which the GPS Device would be activated.

96. As such, Defendant negligently misrepresented the impact the GPS Device would have on the subject vehicle, and further misrepresented the parameters whereby Defendant would use the GPS Device functionality to inhibit Plaintiff's use of the vehicle.

97. Plaintiff relied to her detriment on such misrepresentations, as she agreed to purchase the car with the GPS Device attached based on the representations made.

98. Upon information and belief, Defendant was aware of the potential issues the GPS Device would have on the subject automobile and failed to exercise reasonable care in communicating that information to Plaintiff.

99. Upon further information and belief, Defendant has a pattern and practice of going beyond the bounds of its represented uses for the installed GPS Devices in order to compel consumers to act in accordance with Defendant's desires, regardless of the status of such consumers' payments.

WHEREFORE, Plaintiff, LAURA L. DELACRUZ, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.  Enter judgment in her favor and against Defendant;
b.  Award Plaintiff her actual damages in an amount to be determined at trial;
c.  Award Plaintiff punitive damages in an amount to be determined at trial;
d.  Award any other relief as this Honorable Court deems equitable and just.

Dated: March 12, 2021                    Respectfully submitted,

                                         */s/ Nathan C. Volheim*

                    Nathan C. Volheim, Esq. #6302103
                    *Counsel for Plaintiff*
                    Sulaiman Law Group, Ltd.
                    2500 South Highland Ave., Suite 200
                    Lombard, Illinois 60148
                    (630) 568-3056 (phone)
                    (630) 575-8188 (fax)
                    nvolheim@sulaimanlaw.com